**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 13-cv-02557-CMA-CBS

ALLEN RASMUSSEN,

Plaintiff,

v.

LaTOYA THORNE,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL**

---

At the time he filed the instant suit, Plaintiff Allen Rasmussen knew that Defendant LaToya Thorne did not personally deprive him of any protected rights. After discovery, it became clear that Plaintiff's claim was factually baseless. Nevertheless, Plaintiff's counsel unreasonably multiplied proceedings by refusing to dismiss Plaintiff's claim. For these reasons, the Court grants Defendant's Motion (Doc. # 39), and awards attorney's fees and costs against both Plaintiff and Plaintiff's counsel.

## I. BACKGROUND

On September 22, 2014, Plaintiff voluntarily dismissed this case with prejudice. (Doc. # 35.) Although Plaintiff never responded to Defendant's Motion for Summary Judgment (Doc. # 29), the Court has reviewed the record and all exhibits contained therein and finds there is no genuine dispute of material fact.

## A. STATE COURT PROCEEDINGS

This case arises out of events that occurred in dependency and neglect ("D/N") proceedings in state court ("State Court"). The following is a summary of the proceedings.

Plaintiff is the grandfather of two young children born to Plaintiff's daughter, Venessa Rasmussen, who has a history of substance abuse. (Doc. # 1 at 2, ¶ 3; 7, ¶ 6(b).) In July of 2012, Venessa and her children, C.R. and M.M., became homeless. (*Id.* at ¶ 4.) On July 20, 2012, concerned about the well-being of his grandchildren, Plaintiff contacted Arapahoe County Sheriff's Office. (Doc. # 1 at 8, ¶ 8.) Arapahoe County Department of Human Services ("DHS") commenced a child protection proceeding in State Court and assumed legal custody of Plaintiff's grandchildren. (Doc. # 29 at 4, ¶¶ 5–6.)

Plaintiff expressed to the intake caseworker, Amanda Throckmorton, his desire to gain custody of his grandchildren. (Doc. # 29–5 at 3, ¶ 8.) However, Venessa told Ms. Throckmorton that she did not want her kids placed with Plaintiff because he sexually and physically abused her in the past. (*Id.* at 4, ¶ 12.) After speaking with Venessa and looking into Plaintiff's criminal history, Ms. Throckmorton explained to Plaintiff that she was not considering him for temporary placement. (*Id.* at ¶ 13.) On July 27, 2012, the State Court conducted a temporary custody hearing and ordered that the children be placed with a family friend under the protective supervision of DHS. (Doc. # 29–11 at 3.) The State Court also ordered that any visitation with the

grandchildren occur only upon the consent of the guardian *ad litem* and caseworker. (*Id.*) Defendant became the children's permanent caseworker following the temporary custody hearing. (Doc. # 29 at 6, ¶ 15.)

Plaintiff moved to intervene in the D/N proceedings in an attempt to gain custody of the children. (Doc. 44–1 at 5, ¶ 12.) Venessa opposed the motion because of her concern that Plaintiff would sexually abuse her children. (Doc. # 29 at 7, ¶¶ 19–20.)

On September 24, 2012, Plaintiff, who alleged he was unaware of the July 27 Order, visited the children's temporary home. (*Id.* at 7, ¶ 21.) Defendant, who was at the house when Plaintiff arrived, informed Plaintiff that he could no longer see the children unsupervised. (*Id.* at ¶¶ 22–23.) Plaintiff never requested permission to visit his grandchildren before or after meeting Defendant. (Doc. # 29–6 at 2, ¶ 6.) Instead, Plaintiff disregarded the State Court's order prohibiting him from visiting the children unsupervised and continued to see them until they moved to a foster home on October 19, 2012. (Doc. # 29–1 at 55:21–23.)

On October 12, 2012, the State Court became aware of Plaintiff's ongoing violations of the September 12 Order and, in the presence of Plaintiff and his counsel, ordered that there would be no contact or visitation—supervised or unsupervised—pending a further court order. (Doc. ## 29–1 at 99:6–102:8; 29–9 at 7.) On May 20, 2013, the State Court reinstated the order allowing supervised visitation with the consent of the guardian *ad litem* and Defendant. (Doc. # 29–9 at 3.) Based upon Vanessa's allegations of sexual abuse, Plaintiff's violent criminal history, and multiple

allegations that Plaintiff meted out excessive discipline, the State Court also ordered that Plaintiff would not be considered for permanent placement. (*Id.* at 2–3.) In August 2013, both children were placed in permanent homes. (Doc. # 1 at 11, ¶ 13; 12, ¶ 13.)

**B. FEDERAL COURT PROCEDURAL HISTORY**

Following the conclusion of the State Court proceedings, Plaintiff filed the instant suit seeking damages for his deprivation of familial association between July and December of 2012. (Doc. ## 1 at 13, ¶ 19; 44 at 10, 11, 13.) In short, Plaintiff alleges that Defendant intentionally denied him his constitutional right of familial association with his grandchildren by "withholding her consent to supervised visitation and telephone contact and by maliciously spreading the lie that the Plaintiff had sexually assaulted C.R." (*Id.* at 13, ¶ 18.) Plaintiff also argued that Defendant's approval of the children's permanent placements arbitrarily interfered with his familial relationship. (*Id.* at 12, ¶ 13.) Defendant did not file a motion to dismiss and discovery ensued.

Following discovery, when it became clear that the suit lacked any factual basis supporting Plaintiff's claims, Defendant requested that Plaintiff dismiss the suit. (Doc. # 39–7 at 1.) Plaintiff declined, and Defendant was forced to file her Motion for Summary Judgment on August 15, 2014. (Doc. # 29.) Without responding to the motion, on September 22, 2014, Plaintiff moved to dismiss the complaint with prejudice. (Doc. # 35.) This Court granted that motion. (Doc. # 36.) On October 22, 2014, Defendant filed her Motion for Award of Attorney Fees and Costs Against Plaintiff and

Plaintiff's Counsel. (Doc. # 39.) On December 18, 2014, Plaintiff filed a response, to which Defendant replied on January 5, 2015. (Doc. ## 44, 47.)

## II. DISCUSSION

Ordinarily, the "American rule" bars litigants from collecting fees and costs from the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Courts may assess fees only if it is within their inherent authority to do so or if Congress specifically authorizes the practice by statute. *Id.* at 247, 258.

Defendant seeks attorney's fees and costs under 42 U.S.C. § 1988; the narrow "bad faith" exception to the American rule; and 28 U.S.C. § 1927, alleging that the case was frivolous, vexatious, and had no basis in law or fact. (Doc. # 39 at 1.)

### A. 42 U.S.C. § 1988

Section 1988(b) provides that the court, in its discretion, may award reasonable attorney's fees to the prevailing party. 42 U.S.C. § 1988(b) (2015). While prevailing plaintiffs are ordinarily awarded attorney's fees, "prevailing defendants are only to be awarded attorney's fees when the plaintiff's claim is 'frivolous, unreasonable, or groundless, or [when] the plaintiff continued to litigate after it clearly became so.'" *Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). "This is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1203 (10th Cir. 2001).

Plaintiff argues that Defendant is not a prevailing party under § 1988(b) and, even if she is the prevailing party, his lawsuit was not frivolous.

1. Defendant is the Prevailing Party

Plaintiff contends that Defendant is not a prevailing party because Plaintiff's voluntary dismissal did not constitute a judicially ordered change in legal relationships.

Under section 1988(b), a party prevails when it receives a judgment on the merits in its favor that materially alters the legal relationship of the parties. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603–04 (2001). In order to be considered a prevailing party, however, the change in legal relationship must be effectuated through a court order. *Id.* at 605. Thus, the issue is whether Plaintiff's voluntary dismissal with prejudice operates as a final adjudication on the merits.

If a party voluntarily dismisses its action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), the party is not considered a prevailing party "because in order to create a prevailing party there must be a 'judicially sanctioned change in the legal relationship of the parties.'" *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1215 (10th Cir. 2010) (citing *Buckhannon*, 532 U.S. at 605). However, the Tenth Circuit has indicated that a plaintiff's voluntary dismissal of an action **with** prejudice prior to an opposing party's answer under Rule 41(a)(1)(B) "operates as a final adjudication on the merits." *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) (citation omitted).

*Schmier* did not address whether there is a prevailing party when a plaintiff voluntarily dismisses an action with prejudice. Indeed, the Tenth Circuit has not explicitly addressed this issue. Some circuits have found as a matter of law that a plaintiff's voluntary dismissal with prejudice "has the necessary judicial *imprimatur* to constitute a judicially sanctioned change in the legal relationship of the parties." *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *see also Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005) (finding that a voluntary dismissal with prejudice makes "clear that a decision on the merits has been rendered: [plaintiff's] claims were dismissed with prejudice"). In *Highway Equipment*, the court reasoned that to hold any differently "would imply that the only way for a defendant to obtain a disposition on the merits would be to oppose a dismissal and proceed to litigation on the merits, and would encourage the litigation of unreasonable or groundless claims." 469 F.3d at 1035.

Other circuits require a defendant moving for attorney's fees to show that the plaintiff voluntarily dismissed the case in order to avoid an adverse ruling on the merits. *Dean v. Riser*, 240 F.3d 505, 510–11 (5th Cir. 2001); *see also Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 852 (8th Cir. 1994) ("We emphasize that there is not a scintilla of evidence that Marquart voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits."). The court in *Dean* refused to adopt a *per se* rule, reasoning that courts should "balance the concerns for encouraging vigorous enforcement of civil rights against discouraging frivolous

litigation within the specific and unique context of each individual case." 240 F.3d at 511.

In this case, Defendant is a prevailing party under either analysis. The September 23, 2014 Order granting Plaintiff's Motion to Dismiss operated as a final adjudication on the merits in favor of Defendant. Dismissing with prejudice barred Plaintiff from bringing a claim against Defendant arising out of the same set of facts. Therefore, Plaintiff's voluntary dismissal was a court-ordered change in the parties' legal relationship.

Defendant has also demonstrated that Plaintiff dismissed the case to avoid an unfavorable ruling on the merits. Plaintiff contends that Defendant never considered him for placement "because of her claim that he had a history of violence and had 'multiple' [allegations of] child abuse." (Doc. # 44 at 5–6.) However, it was Ms. Throckmorton, not Defendant, who placed the children in their temporary home. (Doc. # 29–1 at 28:11–22.) After Ms. Throckmorton's temporary placement of the children, Plaintiff had to adjudicate his motion to intervene before he could be considered for placement. (Doc. # 29–11 at 7.) After holding two hearings on Plaintiff's motion to intervene, on May 20, 2013, the State Court found that Plaintiff did indeed have a history of violence and allegations of child abuse and ruled that it would not consider Plaintiff for permanent placement. (Doc. # 29–9 at 3.) Therefore, Defendant never had the opportunity to consider Plaintiff for placement.

Plaintiff also claims that Defendant falsely accused him of "having a number of referrals . . . that have to do with allegations of excessive discipline to the children in his home," and that Defendant repeated this allegation in State Court. (Doc. # 44 at 8.) In fact, the State Court record shows that there **were** allegations of excessive discipline. (Doc. # 29–9 at 2.)[1] Thus, Defendant was speaking truthfully when she testified about allegations against Plaintiff. Finally, Plaintiff alleges that Defendant refused to allow him to have any contact with his grandchildren. (Doc. # 44 at 10.) Throughout discovery, Plaintiff submitted no evidence to support this allegation. In fact, in his deposition, he admits that he never attempted to contact Defendant to get permission to see his grandchildren. (Doc. # 29–1 at 77:20–25.)

These facts adequately demonstrate that Plaintiff withdrew his complaint in order to avoid an unfavorable ruling on the merits. Therefore, the Court finds that Defendant is the prevailing party.

2. Plaintiff's Claim is Frivolous

A frivolous suit is one "based on indisputably meritless legal theory, or whose factual contentions are clearly baseless." *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Subjective bad faith is not required to award attorney's fees to a prevailing defendant, and a "defendant can recover if the plaintiff violates this standard *at any point during the litigation*, not just at

[1] These allegations were contained in the Colorado Department of Human Services' ("CDHS") confidential database called "Trails." CDHS will only disclose whether an individual has founded allegations against him. Unfounded allegations are confidential, but remain in the system. (Doc. # 44–7 at 135:13–22.)

its inception." *Id.* (citations omitted) (emphasis in original).  In determining whether a suit was frivolous, the district court must review the entire course of litigation.  *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004) (citing *Christiansburg*, 434 U.S. at 421–22).  A court should be careful, however, not to engage in "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22.

In this case, Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that Defendant deprived him of his constitutional right to familial association.  In order to succeed on a § 1983 claim, a plaintiff must show that the defendant deprived him of his constitutional rights, and that the defendant was acting under the color of state law.  *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).  Section 1983 claims for loss of familial relationship "can extend to grandparents in certain circumstances." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1175 (10th Cir. 2013) (citing *Suasnavas v. Stover*, 196 Fed.App'x. 647, 657 (10th Cir. 2006)) (further citation omitted).  In *Estate of B.I.C.*, the court explained in dicta that "[w]hen extending the right [of familial association] to grandparents, however, courts often consider whether the grandparents are 'custodial figure[s]' or 'acting in loco parentis,' and 'whether there is a potential conflict between the rights of the [grandparent] and the rights or interests of the [child's] natural parents.'" *Id.* (citations omitted) (second, third, and fourth alterations in original); *see also United States v. White*, 782 F.3d 1118, 1140 (10th Cir. 2015) ("[W]hen grandparents are not

playing any sort of custodial role, [the Tenth Circuit has] not afforded their right to familial association the same degree of protection as a parental right.") (citations omitted).

While the complaint may have stated a § 1983 claim on its face, the underlying facts were inaccurate. The only allegation that may have required discovery was that Defendant repeatedly attempted "to manipulate C.R. into fabricating allegations against his grandfather."[2] (Doc. # 1 at 10, ¶ 11.) Plaintiff was personally involved in the State Court proceedings and knew the majority of his allegations were factually inaccurate at the time he commenced this action.

Even if Plaintiff had a constitutionally protected right to associate with his grandchildren, he was not deprived of that right until October 18, 2012. From July 20, 2012, when Plaintiff called the Arapahoe County Sheriff, until October 18, 2012, when DHS placed the children in foster care, Defendant disobeyed the State Court orders and visited the children unsupervised and without permission. Simply put, Plaintiff may not collect damages under § 1983 for a deprivation that did not occur.

Moreover, Plaintiff knew the State Court, not the Defendant, was responsible for defining the parameters of C.R. and M.M.'s visitation. Plaintiff admits in his deposition that the State Court's October 12, 2012 Order required that Plaintiff not have contact with C.R. pending a further court order. (Doc. # 29–1 at 101:24–102:8.) At the October 12 hearing, the State Court restricted Plaintiff's visitation rights because Plaintiff

[2] This incident occurred in March of 2013. Plaintiff sought damages only for alleged deprivations that occurred in 2012.

continually failed to follow the previous court order. (Doc. # 44–2 at 11:1–5.) The October 12 Order remained in effect until May 20, 2013, when the State Court allowed supervised visitation with the consent of Defendant and the guardian *ad litem*. (Doc. # 29–9.) Assuming that Plaintiff had a constitutionally protected familial association right to see his grandchildren, the State Court, not Defendant, is responsible for depriving him of that right after the children went into foster care.

Finally, Plaintiff's claim became undeniably frivolous on March 28, 2014, when a DHS investigator explained in his deposition that aside from Defendant's peripheral knowledge of C.R.'s allegations of sexual abuse against Plaintiff, Defendant took no part in the investigation. (Doc. # 29–4 at 10:22–11:3.) The investigator also testified that C.R. told his foster mom about the incident, and the foster mom reported it to DHS. (*Id.* at 34:14–23.) The investigator's deposition undermined Plaintiff's only allegation that required discovery, yet Plaintiff continued to refuse to dismiss his complaint.

The Court finds Plaintiff's factual contentions to have been so baseless that they are frivolous. Therefore, the Court grants the award of attorney's fees under 42 U.S.C. § 1988(b).

**B. 28 U.S.C. § 1927**

A court may impose excess costs and fees on an attorney if the attorney unreasonably and vexatiously multiplies proceedings. 28 U.S.C. § 1927 (2015). Under § 1927, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Hamilton v. Boise*

*Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). The purpose of § 1927 is to incentivize "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006). A court may impose § 1927 liability only for the multiplication of proceedings, not the initiation of meritless litigation. *Id.* Sanctions under § 1927 "should be made only in instances evidencing serious and standard disregard for the orderly process of justice." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (citations and internal quotation marks omitted). When awarding fees and costs under § 1988 and § 1927, the sanctioned party and the party's counsel shall be jointly liable for the fees incurred by the moving party. *See Thorpe v. Ancell*, No. 03–cv–01181–LTB–BNB, 2006 WL 2406240, at *6 (D. Colo. Aug. 18, 2006), *aff'd*, 367 F. App'x 914 (10th Cir. 2010).

Defendant argues that the Court should sanction Alison Ruttenberg, Plaintiff's attorney, for: (1) her inadequate conferral about a discovery dispute that resulted in an unnecessary hearing on the matter and (2) failing to dismiss Plaintiff's claim after it became undeniably meritless.

    1.    <u>Discovery Dispute Delay</u>

Because this is a case involving minor children, issues of confidentiality arose during the course of discovery. In one particular instance, state and federal law conflicted concerning what Defendant could legally produce. Defendant's counsel, Edward Caswall, emailed Ms. Ruttenberg on December 20, 2013 and on December 31, 2013, to attempt to confer and resolve the issue. (Doc. ## 17–2, 17–3.) Met with

silence, Mr. Caswall requested on January 15, 2014, that Ms. Ruttenberg provide a time she was available to jointly contact Magistrate Judge Shaffer to resolve the dispute. (Doc. # 17–1.) In the January 15 email, Mr. Caswall provided case law to illustrate his concern about the conflicting laws. (*Id.*) Ms. Ruttenberg refused to set a conference call. (Doc. # 17–4.) On January 17, 2014, Mr. Caswall emailed Ms. Ruttenberg once again to inquire about a time to call Magistrate Judge Shaffer. (Doc. # 17–5.) Again, Ms. Ruttenberg refused, claiming Mr. Caswall did not give her any case law in support of his proposition. (Doc. # 17–6.) Finally, Mr. Caswall sent another email with the same case law outlined in the January 15, 2014 email and explained that he would be filing a motion for *in camera* inspection with the court. (Doc. # 17–7.) Defendant claims the motion for *in camera* inspection and the accompanying hearing are sanctionable under § 1927.

The Court notes the importance of self-managing discovery disputes without judicial intervention. *See Witt v. GC Serv. Ltd. P'ship*, No. 13–cv–02834–RBJ–CBS, 2014 WL 6910500, at *1 (D. Colo. Dec. 9, 2014). However, Ms. Ruttenberg's difficulty in communicating with Mr. Caswall does not rise to the level of disregard contemplated by § 1927. When a party's attempt to confer is met with disagreement, it does not follow that the disagreeing party should be sanctioned under § 1927. Therefore, the Court will not award attorney's fees, costs, or extra expenses for Ms. Ruttenberg's failure to communicate adequately during the discovery dispute.

2. Failing to Re-Evaluate a Meritless Claim

As discussed in Section II(A)(2), *supra*, the vast majority of Plaintiff's allegations were unfounded at the start of litigation. At the close of discovery, Mr. Caswall contacted Ms. Ruttenberg asking her position about dismissing the case. Although Ms. Ruttenberg conceded the lack of merit to Plaintiff's claims after deposing the DHS investigator, she nonetheless refused to dismiss Plaintiff's complaint. (Doc. # 39–7 at 2) (explaining that any events that occurred after the children went into foster care in 2012 "are not relevant").

Assuming Plaintiff had a factual basis for the allegations in the complaint, Ms. Ruttenberg failed to re-evaluate Plaintiff's claim at the close of discovery, even at the urging of opposing counsel. Ms. Ruttenberg is therefore responsible for the excess costs.

**C. AMOUNT OF FEE AWARD**

Defendant submits that the total fees to defend this case was $80,535. Because Defendant exacerbated the proceedings by not filing a motion to dismiss, Plaintiff and Plaintiff's counsel will bear only the costs incurred after discovery.

A court determines the reasonable amount of attorney fees by using the lodestar analysis, multiplying a reasonable hourly rate by the total number of hours reasonably expended. *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted). A reasonable hourly rate "is the prevailing market rate in the relevant community." *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). When determining the rate of

a salaried-government attorney, the court should use "a billing rate equal to their counterparts in expertise in private practice." *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987); *Parker v. Milyard*, No. 12–cv–0048–WYD–MJW, 2013 WL 5200965, at *4 (D. Colo. Sept. 16, 2013). The total number of hours expended are reasonable if the applicant exercises the same "billing judgment" as he would in billing his own client. *Malloy*, 73 F.3d at 1018 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988." *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990).

In this case, Defendant supports his Motion for Attorney Fees with an affidavit of Mr. Caswall, thoroughly outlining his years of experience, the work he performed on this case, and the amount of time spent on each aspect of the case. (Doc. # 39–1.) Mr. Caswall provided figures of the average hourly rate of attorneys with his experience in the Denver Metro area using the Colorado Bar Association's published survey on attorney fee rates.[3] (Doc. # 39 at 8.) Using this survey, he placed his hourly rate of $350 between the 75th and 95th percentile due to his extensive experience, particularly in defending § 1983 lawsuits against governmental entities. (*Id.* at 9.) Mr. Caswall

---

[3] *See Universal Drilling Co., Inc. v. Newpark Drilling Fluids, LLC*, No. 08–cv–02686–MSK–CBS, 2011 WL 715961, at *2 (D. Colo. Feb. 22, 2011) (relying on Colorado Bar Association's survey in determining a reasonable hourly rate); *Guardian Life Ins. Co. of Am. v. Wilds*, No. 12-CV-01215-WYD-KLM, 2014 WL 5293706, at *9 (D. Colo. Oct. 16, 2014) (same).

provided a detailed spreadsheet, in which he conservatively calculated the number of hours expended on the case. (Doc. # 39–1 at 2–15.)

Plaintiff offered no evidence rebutting Defendant's calculation, and he has not argued for an adjustment to the lodestar value. The Court finds Defendant's hourly rate to be reasonable.[4] However, Defendant contributed to the ongoing frivolous litigation by failing to file a motion to dismiss and by failing to contact Plaintiff's counsel for almost two months after the DHS investigator's deposition. Thus, the Court calculates the hours expended from the time that Mr. Caswall asked Ms. Ruttenberg to dismiss the suit on May 19, 2014, until Defendant filed her motion for summary judgment on August 15, 2014. Defense counsel conservatively billed 58.7 hours at a reasonable rate of $350. Therefore, the Court awards Defendant a reasonable attorney fee of $20,545 (58.7 x $350).

Because the Court finds attorney's fees warranted under § 1988 and § 1927, it need not address whether this case falls under the bad faith exception.

## III. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant Thorne's request for attorney's fees in the sum of $20,545 under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927. Specifically, it is ORDERED that Ms. Thorne is awarded fees against

---

[4] *See Meadows at Buena Vista, Inc. v. Ark. Valley Pub'g Co.*, No. 10-CV-02871-MSK-KMT, 2012 WL 4442737, at *5 (D. Colo. Sept. 26, 2012) ("The Plaintiffs have proffered no contrary evidence, and in the absence of contradictory evidence, the Court finds that the rates claimed are reasonable."); *Duran v. Koehler*, No. 10-CV-01569-REB-KMT, 2014 WL 4197578, at *3 (D. Colo. Aug. 25, 2014) (finding billing rate reasonable when defendant offered "neither argument nor evidence to suggest that these rates are inappropriate").

Allen Rasmussen and Alison Ruttenberg, jointly and severally, in the amount of $20,545 for attorney's fees incurred as a result of the work done by Mr. Caswall between May 19, 2014 and August 15, 2014. It is

FURTHER ORDERED that Defendant shall be awarded costs pursuant to Fed. R. Civ. P. 54(d) after complying with D.C. Colo. LCivR. 54.1.

DATED: August 6, 2015

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge